IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

MARCUS LEE COCKERHAM,       )
                                     )
       Plaintiff,         )
                                     )
v.                                       )          **Civil Action No. 5:07-0155**
                                     )
JAMES RUBENSTEIN, et al.,      )
                                     )
       Defendants.      )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending are Plaintiff's Application to Proceed Without Prepayment of Fees (Document No. 2.) and Motion for Preliminary Injunction (Document No. 5.). Having examined Plaintiff's Complaint, the undersigned has concluded that Plaintiff fails to state a claim for which relief can be granted in this matter and therefore respectfully recommends that Plaintiff's Application to Proceed Without Prepayment of Fees (Document No. 2.) and Motion for Preliminary Injunction (Document No. 5.) be denied and this matter be dismissed.

## FACTUAL BACKGROUND

On March 13, 2007, Plaintiff, an inmate at Mount Olive Correctional Complex [MOCC], acting *pro se*, filed his Complaint in this matter claiming entitlement to relief pursuant to 42 U.S.C. § 1983.[1] (Document No. 1.) Plaintiff's allegations stem from his placement into administrative segregation. Plaintiff names the following individuals as Defendants: James Rubenstein, Commissioner of the West Virginia Division of Corrections; Thomas McBride, formerly the Warden

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

of Mount Olive Correctional Complex;[2] William Vest, Deputy Warden; Paul Parry, Associate Warden of Security; Jennifer Ballard, Associate Warden of Programs; and Nathan Lyle, Institutional Investigator. Plaintiff states that he was placed in administrative segregation and required to participate in the Quality of Life Program on March 7, 2004.[3] The Quality of Life Program is a behavior driven progressive incentive system consisting of five levels. Inmates qualify for advancement to the next level by completing required behavioral and educational programs. On September 22, 2004, Plaintiff advanced to Level 3 within the Quality of Life Program. Plaintiff contends that he has completed all program requirements within Level 3, but Defendants refuse to advance Plaintiff to Level 4. Plaintiff asserts that Defendants are violating his due process rights by failing to comply with MOCC's Operational Procedure #3.36. Plaintiff further alleges that Defendants Parry, Lyle, and Ballard have acted with bias toward Plaintiff and are using the Qaulity of Life Program for long term punitive punishment. Plaintiff claims that because he has been placed in administrative segregation, he has been denied all privileges including the "loss of direct access to the prison law library." Plaintiff requests that he be released back into general inmate population, that a permanent injunction be entered ordering Defendants to discontinue the illegal use of the Quality of Life Program for punitive punishment, and that all Defendants be terminated from employment with the Division of Corrections. Plaintiff also requests compensatory and punitive damages. (Document No. 1.)

---

[2] Mr. McBride is no longer the Warden of Mount Olive Correctional Complex. Mr. David Ballard is.

[3] MOCC provides for the management of the administrative segregation inmate population with a stratified incentive quality of life program based on an increased level of privileges for demonstrated appropriate inmate behavior and program compliance. (Document No. 1-2, p. 5.)

2

Plaintiff also filed a Motion for Preliminary Injunction and a Memorandum in Support on March 13, 2007. (Document Nos. 5 and 6.) Plaintiff requests a preliminary injunction concerning the following:

> Order defendants, their successors, agents, employees, and all persons acting in concert with them to provide plaintiff and all other inmates similarly situated in the Quality of Life Program in the segregation unit of Mount Olive Correctional Complex, with direct access to the institutional law library and comply with existing agreements and orders both past and present. Order the defendants to comply to and with existing policy, law, and the United States Constitution to ensure and safeguard plaintiff's rights under the Fourth Amendment, Fifth Amendment, and the Eighth Amendment. Order the defendants to cease the illegal practice of arbitrary punishment through the mismanagement and misuse of the Quality of Life Program and afford Plaintiff and all other inmates similarly situated, all rights, privileges and protections guaranteed under due process requirements of law and the United States Constitution.

(Document No. 5, p. 3.)

By Standing Order filed on August 1, 2006, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 7.) Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at . A claim lacks an arguable basis in fact when it describes "fantastic or delusional

scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him or her to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

### 1.    Due Process Claim.

Although the Fourteenth Amendment of the United States Constitution prohibits a State from depriving "any person of life, liberty, or property, without due process of law," the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for the period of incarceration. See U.S. Const. amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction and imprisonment implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Id. (emphasis

added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectible right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(*quoting* Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that an interest protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Id.

Due process is implicated when an inmate is designated to segregation for a prolonged and indefinite period of time. In Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983), the United States Supreme Court found that under State statutes and regulations, inmate Helms had "a protected liberty interest in remaining in the general prison population." Id., 459 U.S. at 470-71, 103 S.Ct. at 871. The Supreme Court noted that some process is required when an inmate is placed in administrative segregation for a prolonged or indefinite term

5

stating that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate." The Court stated further as follows:

> Prison officials must engage in some sort of periodic review of the confinement of such inmates. This review will not necessarily require that prison officials permit the submission of any additional evidence or statements. The decision . . . will be based on facts relating to a particular prisoner – which will have been ascertained when determining to confine the inmate to administrative segregation – and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for 'proof' in any highly structured manner. * * * [T]he ongoing task of operating the institution will require the prison officials to consider a wide range of administrative considerations . . .

Id. In Sandin v. Connor, the Supreme Court withdrew from the methodology prescribed by Hewitt and shifted the focus of the liberty interest inquiry from the language of a particular regulation to the nature of the deprivation.[4] Sandin, 515 U.S. at 483-84, 115 S.Ct. at 2300. The Supreme Court stated in Sandin that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id. The Court held that an inmate's confinement in disciplinary segregation for one month did not amount to an atypical and significant hardship in relation to the ordinary incidents of prison life and thus did not establish a liberty interest sufficient to invoke a right to due process entitling the inmate to the procedural protections set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 .Ed.2d 935 (1974). Sandin, 515 U.S. at 487, 115 S.Ct. at 2302. The Second Circuit found that an inmate's confinement in segregation for 514 days without having a hearing resulted in confinement

_____

[4] The Supreme Court clearly indicated in Sandin that it was not overruling Hewitt. Sandin, 515 U.S. at 483 n. 5, 115 S.Ct. at 2300 n. 5.

6

that was atypical and significant. <u>Tellier v. Fields</u>, 280 F.3d 69, 80 (2nd Cir. 2000). In <u>Wilkinson v. Austin</u>, 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005), the Court held that an inmate's placement in a supermax prison imposed an atypical and significant hardship because (1) the duration of the placement was indefinite, and after an initial 30-day review, was reviewed annually, and (2) placement disqualified an otherwise eligible inmate from parole consideration. <u>Id.</u>, 545 U.S. at 224, 125 S.Ct. at 2394-95. The Court, however, noted that "any of these conditions standing alone might not be sufficient to create a liberty interest, [but] taken together they impose an atypical and significant hardship within the correctional context."<u>Id.</u> at 224, 2395. Thus, length of time that segregation is imposed remains a factor which Courts must consider in determining whether conditions are significant and atypical.

Once it is determined that a liberty interest is implicated, the issue becomes what process is due to an inmate who is placed in administrative confinement. The Court established the framework to evaluate the sufficiency of particular procedures in <u>Mathews v. Eldridge</u>, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The consideration of three distinct factors is required: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." <u>Wilkinson</u>, 545 U.S. at 224-25, 125 S.Ct. at 2395, (<i>quoting</i> <u>Mathews</u>, 424 U.S. at 335, 96 S.Ct. at 893).

7

**(a)      Liberty Interest in Placement into General Population:**

Based on the foregoing, the undersigned recognizes that there is no firmly established right to be confined in general prison population. Since the length of segregation is a factor that Courts must consider in determining whether conditions are significant and atypical, the Court will consider the length of Plaintiff's confinement in the Quality of Life Program. The Court notes that Plaintiff has been in the Quality of Life Program since March 7, 2004, and has been at Level 3 since September 22, 2004. Unlike the plaintiffs in Tellier[5] and Wilkinson[6], Plaintiff received timely review hearings regarding his Quality of Life placement. Plaintiff admits that review hearings are conducted every 90, 60, 30, or 20 days. (Document No. 1, p. 14.) Plaintiff further acknowledges that he has the opportunity to attend and make statements during the review hearings. (Document No. 1, pp. 15-18.) Applying the principles set forth in Sandin, the undersigned finds that Plaintiff's placement in the Quality of Life Program is neither a condition which exceeded his sentence in an unexpected manner nor creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Therefore, the Court finds that the conditions of confinement in the Quality of Life Program do not implicate a liberty interest.

Even assuming that the length of Plaintiff's confinement in the Quality of Life Program constitutes an atypical or significant hardship, the Court finds that Plaintiff has received appropriate due process. Applying the three factors set forth in Mathews, the undersigned finds that MOCC's Operational Procedure #3.36 provides a sufficient level of process. The Court first considers the

---

[5] In Tellier, the plaintiff was placed in segregation for 514 days without initially be told why or having a hearing. Tellier, 280 F.3d at 80.

[6] The plaintiff in Wilkinson was placed in a supermax prison for an indefinite period of time and his placement was only reviewed annually. Wilkinson, 545 U.S. at 224, 125 S.Ct. at 2394-95.

significance of the inmate's interest in placement into general population. Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); see also Gaston, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges." Therefore, the private interest of being placed into general population must be viewed within the context of the prison system and its accompanying curtailment of liberties.

The second factor addresses the risk of an erroneous placement under the procedures in place, and the probable value, if any, of additional or alternative procedural safeguards. MOCC's Operational Procedure #3.36 "provides for the management of the administrative segregation inmate population with a stratified incentive quality of life program based on an increased level of privileges for demonstrated appropriate inmate behavior and program compliance." (Document No. 1-2, p.5.)  Since Plaintiff's Complaint focuses upon Defendants' failure to advance Plaintiff to Quality of Life Level 4, the Court will begin its review of procedures at Quality of Life Level 3. MOCC's Operational Procedure states that the Case Manager must submit an inmate to the Segregation Commander for a level increase review when the inmate has met the following Level 3 conditions: (a) Maintained Level 3 status for a minimum of ninety (90) consecutive days; (b) Not been convicted of any Class I violations for the past twelve (12) months; (c) Not been convicted of any Class II violations in the past three (3) to six (6) months; and (d) Successfully completed all Level 3 programming. (Document No. 1-2, p. 8.) The Segregation Commander must then determine whether the inmate meets the appropriate criteria. If the Segregation Commander finds that the

inmate has met the criteria, the PRO Unit Review Team interviews the inmate and reviews documentation "to evaluate the inmate's potential for successful adjustment and readiness for placement in Quality of Life Level Four." The undersigned finds that the above procedure is appropriate. Plaintiff's complaint is that his due process rights are being violated because Defendants are improperly restricting Plaintiff to Level 3 when he has completed all level programs and requirements. According to the Court's interpretation of the above procedure, the PRO Unit Review Team has discretion in its determination of whether to advance an inmate to the next Quality of Life level. Therefore, the undersigned finds that Plaintiff is incorrect in his assumption that meeting the above conditions must result in a level advancement. MOCC's Operational Procedure only requires that an inmate's Quality of Life level be reviewed upon the inmate's satisfaction of the above conditions. Plaintiff acknowledges that his Quality of Life level is reviewed every 90, 60, 30, or 20 days and  he has the opportunity to attend and make statements during the review hearings. (Document No. 1, pp. 14-18.) Accordingly, the Court finds that MOCC's Operational Procedure #3.36 properly reduces the risk of erroneous placement by providing for placement reviews.

Finally, the Court will consider the third Mathews factor concerning the State's interest. In the context of prison management, this interest is a dominant consideration. The State's first obligation must be to ensure the safety of guards and prison personnel, the public, and the prisoners themselves. See Hewitt, 459 U.S. at 473, 103 S.Ct. at 864. Additionally, federal courts should afford appropriate deference and flexibility to state officials trying to manage a volatile environment. See Wolff, 418 U.S. at 561-63, 94 S.Ct. at 2977-78. Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life. Sandin, 515 U.S. at 482, 115 S.Ct. at 2299.

The undersigned concludes that a balance of the <u>Mathews</u> factors yields the conclusion that MOCC's Operational Procedure #3.36 is adequate to safeguard any possible liberty interest an inmate has in returning to general population. MOCC's policy provides an informal procedure for review and advancement within the Quality of Life Program.

**(b)     Liberty Interest in Retaining Prison Privileges:**

To the extent that Plaintiff alleges a liberty interest in retaining all privileges, the undersigned finds that Plaintiff's claim is without merit. The denial of privileges and confinement in segregation are matters clearly contemplated by Plaintiff's original sentence. <u>See</u> <u>Gaston</u>, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); <u>Hatch v. District of Columbia</u>, 184 F.3d. 846, 855 (D.C. Cir. 1999)(stating that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); and <u>Gholson v. Murry</u>, 953 F. Supp. 709, 716 (E.D. Va. 1997)(finding that the denial of work opportunities and certain education programs did not impose an atypical and significant hardship on inmates placed in segregation in relation to the ordinary incidents of prison life). Accordingly, to the extent that Plaintiff is claiming his liberty interest in retaining privileges was violated, the undersigned finds that Plaintiff's claims are without merit.

**2.     <u>Eighth Amendment Claim.</u>**

Plaintiff contends that his long term placement in administrative segregation is cruel and unusual punishment prohibited under the Eighth Amendment of the United States Constitution. As a general matter, prohibited punishments under the Eighth Amendment include those which involve

the "unnecessary and wanton infliction of pain," and conditions that are "grossly disproportionate to the severity of the crime warranting imprisonment." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). The Eighth Amendment "not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). However, the Eighth Amendment "does not mandate comfortable prisons." Rhodes, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id., 452 U.S. at 347, 101 S.Ct. at 2399.

The Fourth Circuit stated as follows respecting the constitutionality of holding inmates in segregation for long periods of time in In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999), cert. denied, Mickle v. Moore, 528 U.S. 874, 120 S.Ct. 179, 145 L.Ed.2d 151 (1991):

> [T]he isolation inherent in administrative segregation or maximum custody is not itself constitutionally objectionable. Indeed, this court has noted that "isolation from companionship, restriction on intellectual stimulation[,] and prolonged activity, inescapable accompaniments of segregated confinement, will not render [that] confinement unconstitutional absent other legitimate deprivations." Sweet [v. South Carolina Dep't of Corrections], 529 F.2d at 861 (internal quotation marks omitted).
>
> Moreover, the indefinite duration of the inmates' segregation does not render it unconstitutional. ***[L]ength of time is "simply one consideration among many" in the Eighth Amendment inquiry. Hutto v. Finney , 437 U.S. 678, 687, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); see Sweet, 529 F.2d at 861-62. ***Depression and anxiety are unfortunate concomitants of incarceration; they do not, however, typically constitute the "extreme deprivations . . . required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 8-9, 122 S.Ct. 995, 117 L.Ed.2d 156 (1992). A depressed mental state, without more, does not rise to the level of "serious or significant physical or emotional injury" that must be shown to withstand summary judgment on an Eighth Amendment charge. Strickland [v. Walters], 989 F.2d at 1381; see Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990).

In view of the foregoing authority, Plaintiff clearly does not state facts in support of his Eighth Amendment claim that would entitle him to relief. Although Plaintiff complains that he was inconvenienced in a number of ways as a result of his placement in administrative segregation, his claims do not present a claim of constitutional magnitude for which relief can be granted.

     **3.**     **Access to Law Library.**

Plaintiff asserts that Defendants violated his constitutional rights by denying him "direct access to the prison law library" during his confinement in administrative segregation. The United States Supreme Court discussed the right of prisoners to access to the Courts in <u>Lewis v. Casey</u>, 518 U.S. 343, 116 S.Ct. 2174, 135 L. Ed.2d 606 (1996). Making it perfectly clear that prisoners do not have a right *per se* to a law library or legal assistance, the <u>Lewis</u> Court explained and elaborated upon its earlier decision in <u>Bounds v. Smith</u>, <u>supra</u>, as follows:

> The right that <u>Bounds</u> acknowledged was the (already well-established) right of *access to the courts*. In the cases to which <u>Bounds</u> traced its roots, we had protected that right by prohibiting state prison officials from actively interfering with the inmates' attempts to prepare legal documents, or file them and by requiring state courts to waive filing fees, or transcript fees for indigent inmates. * * * In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. * * * Insofar as the right vindicated by <u>Bounds</u> is concerned, "meaningful access to the courts is the touchstone," and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the law library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

<u>Lewis</u>, 518 U.S. at 350-51, 116 S.Ct. at 2179-80. [Emphasis in opinion; citations omitted.]

It is clear from the <u>Lewis</u> Court's decision that a Complaint alleging deprivation of the right to access to the Courts must include a statement indicating some palpable actual injury. The <u>Lewis</u> Court stated in its Syllabus as follows:

> [T]o establish a <u>Bounds</u> violation, the actual injury that an inmate must demonstrate is that the alleged shortcomings in the prison library or legal assistance program have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. This requirement derives ultimately from the doctrine of standing. Although <u>Bounds</u> made no mention of an actual injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite.

<u>Lewis</u>, 518 U.S. at 343, 116 S.Ct. at 2176. The <u>Lewis</u> Court explained further as follows

> . . . <u>Bounds</u> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

<u>Lewis</u>, 518 U.S. at 355, 116 S.Ct. at 2182.

Based upon the foregoing, the undersigned finds that Plaintiff's allegations of restricted access to the resources of the law library during his confinement in administrative segregation do not implicate a right secured by the Constitution or the laws of the United States. Plaintiff fails to allege any facts or circumstances indicating or creating any basis for inferring that he has sustained actual injury as a consequence of the allegedly restricted access to the resources of the prison's law library. Assuming, therefore, that all of the facts stated in Plaintiff's Complaint are true and construing his Complaint liberally, it is evident that Plaintiff can prove no set of facts in support of his claim that he is being deprived of access to the Courts.

    **4.**    <u>**Conspiracy Claim.**</u>

Finally, Plaintiff alleges that Defendants Parry, Lyle, and Ballard conspired with one another to prevent him from advancing within the Quality of Life Program. To allege a claim of conspiracy, Plaintiff must establish the following elements: (1) an agreement between two or more persons, which constitutes the act, and (2) the doing of either an unlawful act or a lawful act by unlawful means. <u>See</u> <u>United States v. Burgos</u>, 94 F.3d 849, 857 (4th Cir. 1996), <u>cert. denied</u>, 519 U.S. 1151, 117 S.Ct. 1087, 137 L.Ed.2d 221 (1997). Mere conclusory allegations of a conspiracy do not demonstrate the "meeting of the minds" element and therefore, fails to state a cognizable claim. <u>See</u> <u>Brown v. Angelone</u>, 938 F.Supp. 340, 346 (W.D. Va. 1996). Plaintiff does not allege any facts to establish that Defendants Parry, Lyle, and Ballard formed an agreement to prevent Plaintiff from advancing to Level 4 of the Quality of Life Program. The undersigned finds that Plaintiff's conclusory allegations of a conspiracy and bias do not establish a constitutional violation. Therefore, Plaintiff's claim does not rise to the level of constitutional magnitude.

    **5.**    <u>**Plaintiff's Motion for Preliminary Injunction.**</u>

In considering whether to issue an injunction, the District Court must balance the hardships likely to befall the parties if the injunction is, or is not, granted. <u>Blackwelder Furniture Co. v. Seilig</u> <u>Mfg. Co.</u>, 550 F.2d 189, 196 (4th Cir. 1977). Proper balancing of the hardships requires the District Court to weigh the relative importance of four factors:

    (1)    the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;

    (2)    the likelihood of harm to the defendant if the requested relief is granted;

    (3)    the likelihood that the plaintiff will succeed on the merits; and

    (4)    the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997) (*quoting* Rum Creek Coal Sales, Inc., v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991)). Consideration of the first two factors is the first step in the analysis. Blackwelder, 550 F.2d at 196. If the District Court concludes that the balance of the potential hardships favors the Plaintiff, then "it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success." Id.

First, the undersigned finds that the District Court simply cannot consider Plaintiff's request that the Court order that he be granted direct access to the prison's law library and be placed into general prison population. To do so would entail consideration of matters involving the judgment of prison officials' discretion as to an inmate's "location, variations of daily routines, changes in conditions of confinement, and the denial of privileges," which is not a proper subject for judicial consideration.[7] See Gaston, 946 F.2d at 343. Second, the undersigned finds that Plaintiff's request for injunctive relief must fail on substantive grounds. Reading Plaintiff's Motion together with his Complaint and Memorandum of Law, it does not clearly appear that immediate and irreparable injury, loss, or damage will result to Plaintiff if a preliminary injunction is not granted. Proceeding

---

[7] The Fourth Circuit stated in Taylor v. Freeman, 34 F.3d 266, 269 (4th Cir. 1994):

[S]weeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts. This is true where conditions at the prison have been adjudged unconstitutional following trial on the merits. It is especially true where mandatory injunctive relief is sought and only preliminary findings as to the plaintiffs' likelihood of success on the merits have been made.

In view of this pronouncement of the Fourth Circuit, State Courts are more suited and capable in considering the interests of the parties where injunctions and other special or equitable remedies are sough against State agencies.

with the first two factors in the <u>Blackwelder</u> analysis, Plaintiff has failed to allege either irreparable harm to himself if the "requested" injunction is denied or a lack of harm to the Defendants if the injunction should issue. In fact, after balancing the first two factors, the Court finds that the harm to the Defendants clearly outweighs the alleged harm to the Plaintiff and would entail the Court to make a judgment which is not a proper matter for judicial consideration. The undersigned finds that neither grave nor serious questions are presented in this matter, and, as discussed above, Plaintiff cannot succeed on the merits. Plaintiff's request for an injunction must be denied.

## <u>PROPOSAL AND RECOMMENDATION</u>

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's Application to Proceed *in Forma Pauperis* (Document No. 2.) and Motion for Preliminary Injunction (Document No. 5.), **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have thirteen days from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*.

ENTER: January 11, 2008.

R. Clarke VanDervort
United States Magistrate Judge

18